**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joy Jimmy NEAL, Defendant-Appellant.**

**No. 80–2041.**

United States Court of Appeals, Tenth Circuit.

Nov. 5, 1982.

Danny K. Shadid, Oklahoma City, Okl. (Paul Ferguson, Inc., Edmond, Okl., was also on the brief), for defendant-appellant.

John R. Osgood, Asst. U.S. Atty., Oklahoma City, Okl. (Larry D. Patton, U.S. Atty., Oklahoma City, Okl., was also on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a direct appeal by defendant-appellant Joy Jimmy Neal from his conviction on each count of a three-count indictment charging him with using extortionate means to collect an extension of credit to one Joe Curtis Baker in violation of 18 U.S.C. § 894 (Count I); possessing an unregistered firearm defined as a destructive device, namely a one-gallon plastic jug, flammable liquid and rag wick, in violation of 26 U.S.C. § 5861(d) (Count II); and with the distribution of approximately eight ounces of cocaine in violation of 21 U.S.C. § 841(a)(1) (Count III). Neal was sentenced to concurrent terms of ten years' imprisonment on each count.

For reversal, defendant Neal asserts claims that (1) Count I of the indictment was fatally defective for its lack of specificity; (2) Count II was defective in that it failed to charge that the destructive device was designed for use as a weapon; (3) the trial court erred by refusing to sever the various counts and by refusing to order the Government to elect the counts on which it intended to proceed; (4) the offense alleged in Count II is a lesser included offense of that alleged in Count I, resulting in multiple punishments for the same offense in violation of the Double Jeopardy Clause; (5) defendant was denied his right to a fair trial due to the tainting of the jury by one juror's misconduct; and (6) such errors, combined with the insufficiency of the evidence as to all counts, improper admission of physical evidence, improper admission of testimony of other crimes, and the allowance of an in-court identification which was tainted by an impermissibly suggestive pretrial identification, when cumulated, deprived defendant of a fair trial.

I

Viewing all the evidence, direct and circumstantial, together with all reasonable inferences therefrom, in the light most favorable to the Government as we must on this appeal from a guilty verdict, *United States v. Twilligear,* 460 F.2d 79, 81–82 (10th Cir.), the evidence tended to show the following facts.

Government witness Joe Curtis Baker testified that he met Neal in October of 1978 while Neal was involved in the cattle business in Belize. Baker was also involved in the cattle business and in late October or early November he flew with Neal to Belize where Baker met Robert Boles, Neal's business partner. Subsequent to this trip Neal and Baker on numerous occasions discussed the possibility of selling cocaine. (IV R. 101).

Baker testified that Neal told him that Boles was a source of supply for cocaine and that Neal wanted to know if Baker could distribute cocaine once purchased. (IV R. 103). Baker told Neal that he did have a source of distribution and the two entered into an agreement to purchase and distribute cocaine whereby Baker was to transport, distribute, and partially finance the purchase while Neal was to provide money and receive a percentage of the profits for his investment and for introducing Baker to Boles. (IV R. 105).

The money was secured and Baker arranged for a private plane to fly to Belize to pick up two to four kilos of cocaine. Subsequently, Baker and a pilot flew the plane from Abilene, Texas, to Belize where it was loaded with 600 pounds of marijuana rather than the expected two to four kilos of cocaine. (IV R. 108, 198). Neal was not at the Belize airport when the pickup occurred. Baker and the pilot then returned to Abilene where the plane was unloaded and one half of the load was stored near the home of one Joe Connell. (IV R. 198). An employee of Neal's, known by Baker only as Gerald, was also present when the plane arrived. Baker then brought the remaining half of the load with him to Oklahoma City, Oklahoma. Upon Baker's arrival in Oklahoma City he telephoned Neal and informed him that the contraband was marijuana instead of cocaine. (IV R. 110).

Soon thereafter, in late January or early February of 1979, Baker and Neal again attempted to arrange a cocaine purchase. (IV R. 114). This time, Neal represented that he could purchase cocaine from con-

tacts in California. (IV R. 115). Neal purchased commercial airline tickets for Baker and one Monty Hudson to fly to Los Angeles so that they could inspect the product and deal with the source. (IV R. 115–16, 266–68, Pl. Exh. 17). Upon arrival in Los Angeles, Baker and Hudson were picked up by Neal's wife, Jeri, a nephew, and a niece and were taken to the nephew's apartment where a sample of the cocaine was tested by Baker. (IV R. 117, 121–22). Though the cocaine could not be delivered that night, Baker left $9,000 with Hudson and Jeri Neal, flew back to Oklahoma City, and contacted defendant Neal about the aborted connection. (IV R. 123). Neal assured Baker that he would contact his wife and Hudson and go to California himself to obtain the cocaine. (IV R. 124). A few days later Neal called Baker, told him he had returned from California, and set up a rendezvous at an Oklahoma City bar. (IV R. 125–26). At the rendezvous, Neal and one Alan McElhaney delivered eight ounces of cocaine to Baker. (IV R. 127).

Profits from the sale of the cocaine were to be divided between Neal and Baker. (IV R. 134). In fact, however, nothing had been done with the marijuana obtained in the Belize transaction and, in the interest of getting back his initial investments in that affair, Baker withheld the majority of the profits from the cocaine sales. (IV R. 136–37). In that regard Baker testified that he did not give Neal his full share "[b]ecause he didn't deserve it" and that he "gave [Neal] some of the money; not very much, though." (IV R. 136, 235).

Baker further testified that by mid-February Neal began trying to collect money from him. According to Baker, Neal made numerous phone calls from motels in the Oklahoma City area demanding money and threatening Baker with physical harm to him or his family. (IV R. 142–45, 251). During this same period Neal met with Baker and his ex-wife, Reba Mae Baker, at a MacDonald's restaurant in the Oklahoma City area and told Baker that "things would happen to [him]" if he did not pay. (IV R. 139, 142). Similarly, Reba Mae Baker testified that Neal said that her husband "better

come up with the money if he cared anything about his family." (IV R. 370, 388–89). Both Joe Curtis Baker and Reba Mae Baker testified that these threats frightened them to some extent. (IV R. 143, 374).

In late February of 1979, Neal contacted numerous others in an attempt to collect the money. Joe Elliott Baker, Baker's father, testified that Neal twice called him in search of his son and that on another occasion Neal came to his house and told him that "it would be very embarrassing for the family and could be an international incident ... [i]f [Neal] didn't get the money by the next morning." (IV R. 330). Lucien Kempf, a friend of Baker's, had three separate encounters with Neal, during the last of which Neal told Kempf to set up a meeting with Baker and that Kempf's failure to do so "might mean some bad publicity for [Kempf]." (IV R. 354).

On the night of March 1, 1979, Baker returned to his home in Pink in Pottawatomie County, Oklahoma, and found the front of the house on fire, the front window broken out, and a jug containing gasoline on the living room floor. (IV R. 152; Pl. Exhs. 2, 3, and 4). Ted Maxfield, an employee of Baker's, was with Baker at the time and corroborated his story at trial. (V R. 627–30).

An expert in the field of forensic chemistry testified that the liquid in the jug was a flammable hydrocarbon. (V R. 697). Deputy Sheriff Kayle Parker found a cigarette lighter approximately five to six inches from an area of burned grass outside the house (V R. 613), and a gasoline drenched rag was found beneath the broken window, also outside the house. An enforcement officer with the Bureau of Alcohol, Tobacco, and Firearms (ATF) testified that it was his expert opinion that if these materials had been assembled, it "would indeed be an incendiary bomb." (V R. 756, 758). The Government also introduced in evidence a document from the ATF certifying that there was no record that Neal had registered an incendiary device (molotov cocktail) as required by law. (Pl. Exh. 16).

Earlier in the day of the fire-bombing incident, Shelia Rider, a neighbor of Baker's, returned home from work at around 4:00 p.m. and observed a pink Cadillac with a Texas license plate parked in front of her house and defendant Neal at her front door.[1] Neal asked Rider where Baker lived, she told him, and he left in the Cadillac. (V R. 488, 539).

Government witness Donald Webster, a prisoner in the Major County jail, testified that after the fire-bombing incident Neal admitted to him that he had burned Baker's home. Webster also testified that Neal told him that he planned to kill Baker if Baker did not pay him $147,000.

Neal testified in his own behalf and denied ever having any involvement with cocaine, marijuana, or any other drugs. (V R. 831–32). Neal also denied threatening Baker, Baker's family, or Baker's friends. (V R. 825, 849–50). Further, Neal claimed that his trip to California was for the purpose of talking with the British Consulate in Los Angeles about establishing permanent residence in Belize. Neal also denied possessing any incendiary device. (V R. 875–76).

Further evidence will be detailed as necessary in discussing Neal's appellate contentions.

## II

Neal argues that Count I of the indictment was defective in that it did not suffi-

ciently specify the times, places, methods, means, and content of communications of the alleged threats, or to whom they were made. Defendant contends that Count I was insufficient to protect his rights under the Fifth and Sixth Amendments and under the requirements of Fed.R.Crim.P. 7(c)(1). (Brief of Appellant at 21–29).[2]

■ Count I contains all the elements of an offense under 18 U.S.C. § 894(a)(1),[3] it sets forth sufficient facts to inform Neal of the nature and cause of the accusation, and it sufficiently protects him against being twice placed in jeopardy.[4] *Russell v. United States,* 369 U.S. 749, 763–65, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240. The offense was alleged to have been committed between about January 9, 1979, and March 12, 1979, "at Moore, Lindsey, and at other places in the Western District of Oklahoma, and elsewhere." The indictment also specified that Neal participated in the use of extortionate means to collect an extension of credit made to Joe Curtis Baker, stating that Baker was threatened "directly and through others with means which could cause harm to the person, reputation and property of Joe Curtis Baker and others. . . ."

■ Neal's primary argument challenging Count I is that it failed to apprise him of the content or nature of the specific

---

1. Numerous other witnesses identified Neal as driving a pink or beige Cadillac with Texas tags. (IV R. 126–27, 141, 311, 319, 343, 352, and 368; V R. 475, 801, and 835–36). In addition, it was stipulated that on February 17, 1979, Neal was in Noble, Oklahoma, driving a 1977 model beige Cadillac with a Texas license plate. (IV R. 486).

2. Neal first raised these issues, *inter alia,* in a pretrial motion to dismiss. (I R. 56–57). The motion was denied. (I R. 85–86).

3. 18 U.S.C. § 894(a) provides:
   a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means
   (1) to collect or attempt to collect any extension of credit, or
   (2) to punish any person for the nonrepayment thereof,

shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

4. Count I of the indictment reads:
   From on or about January 9, 1979, until on or about March 12, 1979, the exact dates of which are to this Grand Jury unknown, at Moore, Lindsey, and at other places in the Western District of Oklahoma, and elsewhere, JOY JIMMY NEAL did knowingly participate in the use of extortionate means to collect from Joe Curtis Baker an extension of credit made to Joe Curtis Baker in that Joy Jimmy Neal in collecting and attempting to collect the extension of credit expressly and implicitly did threaten Joe Curtis Baker directly and through others with means which could cause harm to the person, reputation and property of Joe Curtis Baker and others, all in violation of Title 18, United States Code, Section 894.

communications alleged to be threatening in nature. He claims that since § 894 defines a speaking offense, the object and content of the communication are crucial to the determination of whether a crime has been committed and are necessary to apprise the defendant of what he must be prepared to meet, citing *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240. (Brief of Defendant-Appellant at 27–29).

*Russell* does not support defendant's position. The Court there held that indictments for violation of 2 U.S.C. § 192, which provides for the punishment of persons who refuse to answer questions before a committee of Congress pertinent to the question then under inquiry, are invalid if they fail to allege the particular subject matter under inquiry. This allegation was required, the Court held, because a critical determination in prosecutions under 2 U.S.C. § 192 is whether the questions not answered were pertinent to the matter under inquiry. There is, however, no similar determination that must be made in prosecutions under 18 U.S.C. § 894. The issue here is whether Neal threatened Baker with means which could cause harm to Baker or others. The content of Neal's alleged threats would of course be material at trial, but greater specificity thereof in view of the other facts alleged in the indictment is not required in order "to sufficiently apprise the defendant 'of what he must be prepared to meet.'" *Russell, supra,* at 764, 82 S.Ct. at 1047.

Neal also places heavy reliance on *United States v. Tomasetta,* 429 F.2d 978 (1st Cir.). There the defendant was also prosecuted under 18 U.S.C. § 894 and the court held the indictment insufficient. The court stated that "the failure to name the victim,

under the circumstances, was fatal...." *Id.* at 979. However, in addition to not specifying the victim's name, the indictment did not state the means of making the threats, although it did state the date and city in which the threat was made. The court stressed that the indictment was to be read as a whole and that the lack of no one factual allegation was determinative, but the court clearly stressed the failure of the indictment to specify the victim's name.

█ Here Count I states that the extension of credit at issue was made to Baker, that Neal knowingly participated in the use of extortionate means to collect such extension of credit from Baker, the approximate period of time involved (just over two months), and that Neal expressly and implicitly threatened Baker and others. We also feel it proper to note that the nature of the charge and the evidence before the grand jury are further revealed by Counts II and III of the indictment. *See Flores v. United States,* 338 F.2d 966, 967 (10th Cir.).[5] They charged possession of an incendiary device in Pottawatomie County in the Western District of Oklahoma on or about March 1, 1979, and the eight ounce cocaine delivery on or about February 12, 1979, by Neal to Baker in that District, which events fell within the area and approximate time frame of the alleged use of extortionate means. Further, although a bill of particulars cannot cure an invalid indictment, *Russell, supra,* 369 U.S. at 770, 82 S.Ct. at 1050, we find it significant that the bill of particulars provided by the Government here enumerated specific incidents including dates, locations, and actions involved, when Neal extortionately attempted to collect money from Baker.[6]

---

5. We are mindful that the requirements on the contents of an indictment are, among other things noted, enforced "so as to limit a defendant's jeopardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him. *Russell, supra,* 369 U.S. at 770–71, 82 S.Ct. at 1050–51...." *United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir.), *cert. denied,* 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81.

6. In this case, Neal filed a motion for a bill of particulars which was granted in part and denied in part. The Government was ordered to file a bill of particulars "in conformity with the requirement of apprising the defendant with the nature of the charges against him except as to evidentiary minutia such as names and addresses of witnesses." (I R. 86). The Government then filed a bill of particulars, paragraphs 13 and 14 of which make reference to specific

We note that an indictment with much of the same language as Count I here was recently held sufficient by this court in *United States v. Frix,* Nos. 80–1352, 80–1353 (10th Cir. 3/2/81, unpublished) (slip op. at 6–7). The most significant difference is that the indictment in *Frix* was more particularized by alleging the $5,000 debt there involved and the approximate time of the extension of credit. We are concerned by the failure here to state the approximate time or amount of credit extended so as to identify the debt. We nevertheless feel the indictment was not fatally defective in view of the other details alleged, which we have noted. *See United States v. Schaffer,* 539 F.2d 653, 655 (8th Cir.).

### III

Defendant Neal claims error as to Count II on three grounds. First, he says that Count II of the indictment was fatally defective because it did not allege one of the crucial elements of the offense charged, namely that the device was not one which was neither designed nor redesigned for use as a weapon. Second, he argues that the indictment failed to allege intent to convert the device for use as a weapon. Third, Neal contends that the Government's failure to file a bill of particulars as to Count II, as ordered by the court, requires reversal on that count.

In pertinent part, Count II charged that Neal (I R. 5):

> did knowingly and unlawfully possess a firearm as defined by Section 5845(a) and (f), Title 26, United States Code, to-wit: a destructive device made from a one gallon plastic jug, a· flammable liquid, and a rag wick, which was not registered to him in the National Firearms Registration and Transfer Record, all in violation of Title 26, United States Code, Section 5861(d).

Neal claims that Count II was defective in that it failed to charge the element of the offense required by the portion of 26

U.S.C. § ·5845(f) which provides that "[t]he term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon. . . ." Neal says that the intent to convert the device for use as a weapon is a crucial element of the offense and that the indictment was defective since it did not allege that the device in question was designed for use as a weapon.[7]

We disagree. The language of § 5845 quoted above is not a critical element of the offense that must be specifically alleged in the indictment. The language, "[t]he term, 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon . . .," has been said to be an affirmative defense. *See United States v. Posnjak,* 457 F.2d 1110, 1116 (2d Cir.); *United States v. Oba,* 448 F.2d 892, 894 (9th Cir.), *cert. denied,* 405 U.S. 935, 92 S.Ct. 979, 30 L.Ed.2d 811. Since an indictment need not anticipate affirmative defenses to be sufficient, *United States v. Sisson,* 399 U.S. 267, 288, 90 S.Ct. 2117, 2128, 26 L.Ed.2d 608; *United States v. Cartano,* 534 F.2d 788, 791 (8th Cir.), *cert. denied,* 429 U.S. 843, 97 S.Ct. 121, 50 L.Ed.2d 113; *United States v. Miranda,* 494 F.2d 783, 785–87 (5th Cir.), *cert. denied,* 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181; *United States v. Ramzy,* 446 F.2d 1184, 1186 (5th Cir.), *cert. denied,* 404 U.S. 992, 92 S.Ct. 537, 30 L.Ed.2d 544, the indictment was not required to contain the quoted language.

In addition, the indictment was not insufficient for failure to allege in the terms of 26 U.S.C. § 5845(f)(3) that the device was a "combination of parts *either designed or intended for use in converting any device* into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled." (Emphasis added). The indictment charged Neal with possession of "a destructive device *made from* a one gallon plastic jug, a flammable liquid,

---

dates and places of alleged attempts to collect money. (I R. 89).

7. Defendant raised this issue in the district court by a motion to dismiss. (I R. 64–65). The motion was denied. (I R. 85–86).

and a rag wick...." (Emphasis added). Fairly read, Neal was charged with possession of an assembled device under subparagraph (1), and not a "combination of parts ... from which a destructive device may be readily assembled" under subparagraph (3). *See United States v. Wilson,* 546 F.2d 1175, 1177, (5th Cir.), *cert. denied,* 431 U.S. 901, 97 S.Ct. 1690, 52 L.Ed.2d 384; *United States v. Cruz,* 492 F.2d 217, 219 (2d Cir.), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 239; *United States v. Ross,* 458 F.2d 1144, 1145–46 (5th Cir.), *cert. denied,* 409 U.S. 868, 93 S.Ct. 167, 34 L.Ed.2d 118; *cf. Burchfield v. United States,* 544 F.2d 922, 923–25 (7th Cir.), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (indictment which alleged possession of destructive device described as three sticks of dynamite, three blasting caps with orange and yellow wires, one lantern battery and one coil of red plastic-covered cord was analyzed as a "combination of parts" under § 5845(f)(3)); *see generally,* Annot., 25 A.L. R.Fed. 344, 368–71. Thus Count II was not insufficient for its failure to allege that the combination of parts was "designed or intended" for use in converting any device into a destructive device.

█ Neal also argues that his conviction on Count II should be reversed because the Government failed to file a bill of particulars. Neal's motion for a bill of particulars as to Count II was confessed by the Assistant United States Attorney during a pre-trial hearing; the Assistant United States Attorney stated that the information would be given to Neal pursuant to Rule 16, and that it would be contained in a report prepared by Government experts and "if it is not contained in the report, we would attempt to supplement this report with the expert...." The court then agreed that Neal was entitled to know some of the information he had requested. (VI R. 14).

Neal's counsel first raised the Government's alleged failure to disclose the promised information during trial after the Government had presented its opening statement. At that point defense counsel made an oral motion in limine, requesting that the Government be prevented from introducing evidence pertaining to Count II. The trial court denied the motion, primarily because the alleged non-disclosure was not brought to the court's attention prior to trial, stating that defendant had failed to diligently assert his rights. (IV R. 81–86).

The trial court did not abuse its discretion in denying the motion. A bill of particulars alleging specific information as to Counts I and III was filed twelve days before the trial began. (I R. 88). As noted, neither defendant nor his counsel brought the bill's deficiency to the court's attention until Government counsel had made his opening statement. When arguing his motion, defendant's counsel explained that he had not complained about the inadequacy of the bill of particulars earlier because the Government had promised him the information and had been feeding it to him in pieces. (IV R. 82–85). Defense counsel did not, however, explain to the district court what requested information the Government had failed to disclose or how non-disclosure had prejudiced the defendant, and no such showing is made to us. Since defendant has shown neither prejudice nor an abuse of discretion, we hold that the district court did not err in denying Neal's request to exclude the evidence. *See United States v. Harbin,* 601 F.2d 773, 778–79 (5th Cir.), *cert. denied,* 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327; *United States v. Bullock,* 551 F.2d 1377, 1383–84 (5th Cir.); *Hansen v. United States,* 393 F.2d 763, 769–70 (8th Cir.), *cert. denied,* 393 U.S. 833, 89 S.Ct. 103, 21 L.Ed.2d 103.

### IV

Prior to trial, following the close of the Government's case, and at the end of trial Neal submitted motions for severance of the three counts and to compel the Government to elect the count or counts on which it intended to proceed, or, in the alternative, to dismiss counts II and III or order separate trials on those counts. (I R. 44–46, V R. 781–82, and 925). All such motions were denied. On appeal, Neal contends that the trial court's refusal to sever the counts or to

compel the Government to elect the count or counts on which it intended to proceed was manifestly prejudicial. (Brief of Defendant-Appellant at 32).

Neal argues that the prejudice was a product of the jury's inability to compartmentalize the evidence as to the particular charges since the evidence was weak, two of the counts were not factually related, and the Government used the same evidence in all three counts. Thus, Neal claims the Government was allowed to cumulate all the evidence to obtain the three convictions and the trial court's failure to sever or compel the Government to elect the count or counts on which it intended to proceed requires reversal on all counts.

Neal was charged with three offenses in one indictment, as permitted by Rule 8(a), F.R.Crim.P., since the offenses were "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Rule 8(a), F.R.Crim.P. Neal's motions also involve Rule 14 of the Federal Rules of Criminal Procedure, which allows the trial court to "order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires" if a defendant will be prejudiced by joinder of offenses.

■ It is well settled that the grant or denial of a severance under Rule 14, F.R.Crim.P., lies within the sound discretion of the trial court.[8] *See Opper v. United States,* 348 U.S. 84, 95, 75 S.Ct. 158, 165, 99 L.Ed. 101; *United States v. Day,* 533 F.2d 524, 526 (10th Cir.), *cert. denied,* 444 U.S. 902, 100 S.Ct. 214, 62 L.Ed.2d 139; *United States v. Eaton,* 485 F.2d 102, 106 (10th Cir.). Only when a defendant shows an abuse of that discretion will this court intervene. *United States v. Van Scoy,* 482 F.2d 347, 349 (10th Cir.); *United States v. Rodgers,* 419 F.2d 1315, 1317–18 (10th Cir.); *United States v. Kellerman,* 432 F.2d 371, 375 (10th Cir.). For prejudice resulting from denial of a severance motion to justify reversal, the defendant must show more than just a better chance of acquittal at separate trials. *United States v. Dennis,* 625 F.2d 782, 802 (8th Cir.); *United States v. Lord,* 565 F.2d 831, 839 (2nd Cir.).

■ We find no abuse of discretion. Our canvass of the record indicates there was distinct proof on the three separate counts and the jury was properly instructed that each count should be considered separately. (V R. 946–47).

V

Neal claims that his conviction and sentence on Count II, possession of an unregistered firearm, subject him to multiple punishments for the same offense in violation of the Fifth Amendment Double Jeopardy Clause in that Count II was a lesser included offense of the crime alleged in Count I, extortionate extension of credit, citing *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187. Neal contends that the Government used the unregistered firearm charge as the basis for proving the charge of using extortionate means to collect. (Brief of Defendant-Appellant at 39–40).

■ Neal's position is untenable. The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." The established test for determining whether two offenses are the "same offense" was stated in *Blockburger v. United*

---

**8.** As noted, Neal also requested that the trial court order the Government to elect the count or counts on which it intended to proceed, or grant separate trials on counts II and III. In addition to severance, Rule 14 also provides for "an election or separate trial of counts." "This language, rather than the term 'severance,' is used simply because the option to determine the order in which counts are to be tried rests with the government." 8 Moore, Federal Practice—Criminal Rules ¶ 14.02[1], n. 1a, at 14–3 (2d ed. 1981). Our reference to Neal's "severance" motion includes his motions for election and separate trial, all subject to the same standard of review. *See e.g. United States v. Beathune,* 527 F.2d 696, 698–99 (10th Cir.), *cert. denied,* 425 U.S. 996, 96 S.Ct. 2211, 48 L.Ed.2d 821; *United States v. Van Scoy,* 482 F.2d 347, 348–49 (10th Cir.); *United States v. Jorgenson,* 451 F.2d 516, 523 (10th Cir.), *cert. denied,* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793.

*States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of a fact which the other does not.* (Emphasis added).

The Supreme Court has subsequently reaffirmed the *Blockburger* test, *see, e.g., Albernaz v. United States,* 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275; *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228; *Brown v. Ohio, supra,* 432 U.S. at 166, 97 S.Ct. at 2225; *American Tobacco Co. v. United States,* 328 U.S. 781, 787–88, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575, as we have recognized. *United States v. Puckett,* 692 F.2d 663, 667–668 (10th Cir.); *Robbins v. United States,* 476 F.2d 26, 32–33 (10th Cir.). The focus of the test is on the elements of the crimes involved. *Brown v. Ohio, supra,* 432 U.S. at 166, 97 S.Ct. at 2225.

It is true, as Neal contends, that in *Brown v. Ohio, supra,* the Court held that a lesser included and greater offense are the "same offense" under *Blockburger.* However, Neal reads *Brown v. Ohio* too broadly. "As is invariably true of a greater and lesser included offense, the lesser offense ... requires no proof beyond that which is required for conviction of the greater .... The greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." *Id.,* at 168, 97 S.Ct. at 2226. Here, however, proof of the crime of use of extortionate means does not necessarily establish the crime of possession of an unregistered firearm. Conviction of the crime alleged in Count I required proof of (1) an extension of credit, (2) the use of extortionate means to collect or attempt to collect the extension of credit, and (3) knowing participation in any way by the defendant,[9] while conviction of the crime alleged in Count II required proof that the defendant was (1) in possession of (2) a statutorily defined firearm (*see* Part III, *supra*) and (3) that the firearm was not registered in the National Firearms Registration and Transfer Record.[10] Under the test of *Blockburger,* Count I and Count II each required proof of facts which the other did not. Among other things, Count II is a possession crime while Count I is not, and Count I requires proof of an extension of credit while Count II does not.

We are not persuaded by Neal's argument that the possession charge was a lesser included offense of the extortion charge merely because, as the facts were developed here, the extortion was partially effected by the firearm. The fact that some of the evidence supports convictions on both counts does not bar convictions on both. *Cf. Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (petitioner's convictions of conspiracy to import and conspiracy to distribute marijuana under single conspiracy held not violative of the Double Jeopardy Clause since distinct statutory provisions were involved, the violation of which can result in consecutive sentences). "If each [crime] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616. Moreover, there was evidence beyond that concerning the firearm from which the jury might reasonably infer

---

**9.** 18 U.S.C. § 894 in pertinent part provides:

(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means
(1) to collect or attempt to collect any extension of credit, or
(2) to punish any person for the nonrepayment thereof....

**10.** 26 U.S.C. § 5861(d) in pertinent part provides:

It shall be unlawful for any person—

\* \* \* \* \* \*

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record ....

the use of extortionate means.[11] We are satisfied that there was no violation of the Double Jeopardy Clause.

## VI

■ Neal next argues that he was denied his Sixth Amendment right to a fair trial by an impartial jury when a juror tainted the remainder of the jury during trial.

This issue first came to the attention of the trial court during a bench conference when defense counsel told the judge that he had heard juror Mitchell say "hearsay" during his cross-examination of a Government witness. (IV R. 391; I R. 95). After some discussion and an overnight recess, the trial court made two suggestions to resolve the problem: (1) the trial court, with counsel present if they desired, could have a discussion with the juror to determine whether he had formed an opinion or had any prejudice or bias in the case; or (2) the parties could stipulate pursuant to Rule 23(b), F.R. Crim.P., to excuse juror Mitchell and proceed with eleven jurors. (V R. 435–36, 438). Counsel for both sides, and the defendant in person, agreed to the latter procedure and a written stipulation was signed excusing juror Mitchell and authorizing the trial to proceed with eleven jurors. (I R. 95–96; V R. 437–39).

On appeal, defendant argues that despite the stipulation, he was denied a fair trial because the remaining jurors might have been tainted. Defendant says that mere suspicion of taint is cause for alarm and that when such suspicion exists, the Government bears a heavy burden to show the absence of prejudice, citing *Remmer v.* *United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654; *United States v. Howard,* 506 F.2d 865 (5th Cir.); and *Vermont v. Woodard,* 353 A.2d 321 (Vt.), *inter alia.* Neal asserts that the effect of juror Mitchell's comment was to commence juror deliberations prematurely, that the comment may have influenced the jury, and that at the very least juror Mitchell's remark placed defense counsel in a bad light. Defendant would thus conclude that the possibility of taint gave rise to a presumption of prejudice and placed a heavy burden on the Government to show the absence of prejudice to the defendant, which burden the Government did not meet, and that the trial court incorrectly assumed that juror Mitchell's remark did not influence the remainder of the jury.

We feel that by entering into the stipulation here pursuant to Rule 23(b), defendant affirmatively waived his right to complain about any taint to the remainder of the jury resulting from juror Mitchell's remark.[12] When defense counsel brought the "hearsay" remark to the judge's attention, he moved for a mistrial stating, *inter alia,* that Mitchell was talking to the rest of the jury about the case and making comments on it. (IV R. 397). At this juncture, there was nothing in the record, other than the statements of defense counsel to the court, indicating that any member of the jury had heard the remark. (*See* IV R. 406). The motion for a mistrial was not immediately considered. The trial judge recessed the court for the day and stated that he would look at the case to see whether the remark was important or serious enough to constitute a violation of the court's instructions

---

**11.** As detailed in Part I, *supra,* Neal threatened Baker, Baker's wife and father, and Baker's friends.

**12.** Defendant also notes that juror Mitchell earlier initiated a conversation with agent Tate of the ATF, a witness for the Government at trial. After the Government brought this incident to the attention of the court, defense counsel moved for a mistrial (IV R. 392), claiming any communication between a juror and a party is unauthorized. After a hearing of testimony of the agent out of the presence of the jury, the trial judge found that the conversation did not appear to violate his admonition to the jury and was not juror misconduct. (V R. 395–96, 402, and 404).

Again we conclude that defendant waived his right to assert the issue on appeal. In addition, since the record shows that the conversation did not relate to the case, but only consisted of an inquiry by Mitchell concerning a worker in a Government cafeteria and a response by agent Tate that he could not talk to the juror, (IV R. 399–402), the trial court did not err in the findings he made.

or to be grounds for a mistrial. (IV R. 406–07).

When court reconvened the next morning, the judge made the two suggestions listed above—a discussion with juror Mitchell or a stipulation pursuant to Rule 23(b). In explaining the Rule 23(b) procedure, the judge said "this is a solution that takes any controversy out of the matter." (V R. 436). After talking over the situation with the defendant, defense counsel stated that they had conferred as to both options and agreed to proceed under Rule 23(b). (V R. 437–39). The written stipulation, signed by counsel and defendant himself, covered both the juror's contact with Agent Tate (*see* n. 11, *supra*), and the "hearsay" remark by the juror.[13]

It is true that excusing one juror might not adequately deal with such a problem in some instances because the remainder of the jury might still have been improperly influenced. Nevertheless, in view of the way in which the problem was handled here, and defendant's going forward without any further objection after the remedial action was taken, we hold that defendant waived his right to raise any issue concerning possible taint of the remainder of the jury on this ground thereafter. *See United States v. Provenzano,* 620 F.2d 985, 997 (3d Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129; *United States v. Gigax,* 605 F.2d 507, 514–15 (10th Cir.); *Maxfield v. United States,* 360 F.2d 97, 103 (10th Cir.), *cert. denied,* 385 U.S. 830, 87 S.Ct. 66, 17 L.Ed.2d 66. Defendant, with advice of counsel, "agreed that *this case may proceed* with the jury consisting of only eleven (11) persons. . . ." (Emphasis added) (I R. 95). The agreement was reached after the court's admonition that the Rule 23(b) solution "takes any controversy out of the matter."

We are convinced that objections concerning the incidents were waived.

### VII

■ Finally, Neal contends that if the court does not deem any of the claimed errors reversible separately, their cumulative effect should be held to require a reversal when considered together with the insufficiency of the evidence as to all counts, the improper admission of testimony of other crimes, and the admission of an in-court identification which was tainted.

We disagree. We are satisfied that these complaints, viewed separately or in combination, do not call for reversal. Substantial evidence sufficiently supports the convictions on all three charges. (*See* Part I, *supra*). Moreover, we find no error in the admission of physical evidence, the other crimes testimony, or the in-court identification. In sum, we are not persuaded that reversible error is demonstrated by any of the arguments made. Accordingly, the judgment of the district court is

AFFIRMED.

---

**13.** The stipulation provided (I R. 95):

STIPULATION

It having been reported to the Court that Juror Martin K. Mitchell, Jr. during the trial herein contacted Jerry Tate, an agent of the Alcohol, Tobacco and Firearms Agency, who had been identified to the jury as such an agent and who has been seated at counsel table for the government, and although Agent Tate has not yet testified in this trial, he is listed as a future government witness and in said contact said juror attempted to engage said agent in conversation although such conversation was not related to this case, at which occurrence said Agent Tate declined to converse with said juror, and it having also been reported to the Court by defense counsel that upon asking a government witness a question said juror was heard to remark "hearsay", and all of the above having been discussed by the Court with all counsel and the Court also advising that the Court was agreeable to conversing with said juror to determine if he had formed an opinion about the case or is prejudiced against one side or the other in the case, and Rule 23(b), Federal Rules of Criminal Procedure, also having [been] discussed with counsel for both sides, and said Rule being privately discussed by his attorneys, [*sic*]

It is hereby stipulated by the parties hereto that for and by reason of the foregoing circumstances it is agreed that this case may proceed with the jury consisting of only eleven (11) persons with the said Juror Martin K. Mitchell, Jr. being excused by the Court from further participation herein as a juror.