FILED
United States Court of Appeals
Tenth Circuit

November 21, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICHARD DEAN BASNETT,

Defendant-Appellant.

No. 12-7074

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:12-CR-00015-RAW-1)**

_____

Carl Folsom, III, Research and Writing Specialist (Julia L. O'Connell, Federal Public Defender, and Robert Ridenour, Assistant Federal Public Defender, on the briefs), Office of the Federal Public Defender, Eastern District of Oklahoma, Muskogee, Oklahoma, for Defendant-Appellant.

Gregory Dean Burris, Assistant United States Attorney (Linda A. Epperley, Assistant United States Attorney, on the brief), Office of the United States Attorney, Eastern District of Oklahoma, Muskogee, Oklahoma, for Plaintiff-Appellee.

Before **HARTZ, HOLMES,** and **BACHARACH,** Circuit Judges.

**BACHARACH**, Circuit Judge.

The Defendant, Mr. Richard Basnett, was convicted of unlawful possession of a firearm and sentenced to 37 months of imprisonment (with 2 years of supervised release). He appeals, arguing that the sentence was too long. When the trial court imposed the sentence, it relied on guidelines governing possession of at least eight firearms and possession of firearms in connection with a separate felony.

We must decide whether the district court had enough evidence to reasonably infer that Mr. Basnett possessed: (1) eight or more guns (other than antiques or those owned solely for hunting or collecting), and (2) at least one gun in connection with a separate felony. We conclude that the government had sufficient evidence to draw these inferences, and we affirm.

## I.    The Quantity of "Firearms"

Mr. Basnett does not deny that he possessed firearms, but does challenge the number attributed to him. We reject this challenge.

### A.    The Quantity of Firearms

The threshold question is whether the district judge could reasonably infer the presence of at least eight "firearms" (as defined by federal statute). At sentencing, the district judge applied an enhancement based on a sentencing guideline requiring possession of at least eight firearms. This enhancement was supported by the testimony of Agent Ashley Stephens, who noted that officers had found ten guns in their first search of Mr. Basnett's home and four additional

guns in a second search of the home.  R. vol. 2, at 101-02.  From this evidence, the district court could reasonably infer that Mr. Basnett had at least eight guns.

### B. Whether the Firearms Were Antiques

The resulting question is whether the 8+ guns are considered "firearms" for purposes of federal law.  Mr. Basnett points out that a gun does not count if it is an antique.  He is correct; thus, the question is whether there were at least eight non-antique guns in his home.  *See* 18 U.S.C. § 921(a)(3) (2006).

This question requires us to determine which party bears the initial burden of producing evidence on whether the guns were antiques.  We make that determination in the context of the federal statute defining "firearm."

The statute defines "firearm" to mean a weapon that can be readily "converted to expel a projectile," but "does not include an antique firearm."  *Id.* This language leads both parties to pin the burden of proof on the other.  The government states that because the statute provides an exclusion for antiques, characterization as an antique is an affirmative defense; Mr. Basnett states that because the statute provides an exclusion for antiques, the government must prove that the gun is not an antique.

We agree with the government based on our decision in *United States v. Neal*, 692 F.2d 1296 (10th Cir. 1982), where we held that an exclusion (built into the statutory definition of a "firearm") involves an affirmative defense rather than an element of the government's prima facie case.

In *United States v. Neal*, the issue was whether a weapon constituted a "firearm" consisting of a "destructive device." *See Neal*, 692 F.2d at 1303. Like the law defining a "firearm," the law in *Neal* said what the term "destructive device" excluded: "The term, 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f) (1976). Because the law said what the term "destructive device" didn't include—rather than what it did include—the defendant argued that the issue involved an "element of the offense." *Neal*, 692 F.2d at 1303. We rejected this argument, treating the exclusion as an affirmative defense rather than as an element of the government's prima facie case. *Id.*

We cannot fathom a way to treat the exclusion in *Neal* as an affirmative defense and the exclusion here as an element of the government's prima facie case. In *Neal* and the present case, the underlying statutes contained nearly identical language. Both statutes said what the term ("firearm" or its subset, "destructive device") "shall not include." 26 U.S.C. § 5845(f) (1976); 18 U.S.C. § 921(a)(3) (2006). In *Neal*, we held that this language required us to treat the exclusion as an affirmative defense. There is no conceivable reason for us to treat the exclusions for "destructive devices" and "firearms" differently. Indeed, the definition of "firearm" expressly includes all "destructive devices." 18 U.S.C. § 921(a)(3) (2006).

Every circuit court of appeals to consider the issue has treated the antique exception as affirmative defense. *See Gil v. Holder*, 651 F.3d 1000, 1005 n.3 (9th Cir. 2011) ("[E]very other circuit of which we are aware that has considered the § 921(a)(3) 'antique firearm' exception in the criminal context, has treated it as an affirmative defense rather than an element of the crime."); *United States v. Lawrence*, 349 F.3d 109, 122 (3d Cir. 2003) ("Every circuit court of appeals that has considered this issue has agreed that establishing that a weapon is an 'antique, firearm' for purposes of §§ 921 and 922 is an affirmative defense. . . .").

Were we writing on a clean slate, we would be inclined to follow the approach taken by these courts. Surely owners of antique guns are better equipped to prove that their guns are antiques than the government, which would otherwise bear the initial burden of producing evidence in *every* case to prove what a gun is not. *See United States v. Mayo*, 705 F.2d 62, 76 (2d Cir. 1983) (holding that the defendant bore the burden of proving a gun's antique status in part because dealers or collectors of antique guns are "in a better position to place the [antique-gun] exception in issue"); *Lawrence*, 349 F.3d at 121-22 (treating antique status as an affirmative defense in part because the government cannot be expected to address whether the gun is an "antique" when the defense did not establish the date of manufacture). But, we are not writing on a clean slate. We decided the issue in *Neal*, concluding that Congress created an affirmative defense when it said what a "destructive device" excluded.

-5-

In his reply brief, Mr. Basnett discounts the case law involving the definition of a "firearm," pointing out that we are dealing here with a sentencing enhancement rather than an issue involving guilt or innocence. Appellant's Reply Br. at 2-3, 6. But the guideline commentary expressly adopts the statutory definition of a "firearm." U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.1 (2011). We would have no logical basis to interpret the same statutory language one way in *Neal* and the opposite way for sentencing (as Mr. Basnett would have us do). Thus, we follow *Neal* in deciding that characterization as an antique is an affirmative defense rather than an element of the government's prima facie burden. *See United States v. Spedalieri*, 910 F.2d 707, 710 n.3 (10th Cir. 1990) (a panel cannot overrule circuit precedent).

Because characterization as an antique involves an affirmative defense, the defendant bears the initial burden of producing evidence. *See Patterson v. New York*, 432 U.S. 197, 206-07 (1977).

Mr. Basnett presented no evidence to indicate that a single gun in his home was an antique. Even without any evidence by Mr. Basnett, a deputy sheriff testified that the guns seen in the first home visit were not antiques. R. vol. 2, at 71. From this testimony, the sentencing judge could reasonably find that Mr.

Basnett had at least eight guns that are considered "firearms" for purposes of the sentencing enhancement.[1]

## II. Potential Downward Adjustment for Hunting or Collecting

The district court could have applied a downward adjustment to the guideline calculation if Mr. Basnett possessed the guns solely to collect or hunt. U.S. Sentencing Guidelines Manual § 2K2.1(b)(2) (2011). For a downward adjustment, however, Mr. Basnett bore the burden of proving by a preponderance of the evidence that he had owned the guns exclusively for collecting or hunting. *See United States v. Hanson*, 534 F.3d 1315, 1317 (10th Cir. 2008). The district court did not adjust the guidelines downward on this basis, and Mr. Basnett contends that the omission constituted error. We disagree.

The sentencing guidelines advise a downward adjustment in the offense level if the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection." U.S. Sentencing Guidelines Manual § 2K2.1(b)(2) (2011).

Mr. Basnett states that he owned the guns to hunt. But, he never raised this issue in the district court; thus, we consider only whether the district court committed plain error. *See United States v. Mendoza*, 543 F.3d 1186, 1191 (10th

---

[1] In his reply brief, Mr. Basnett argues that the government did not present evidence that any of the guns had traveled in interstate commerce. Appellant's Reply Br. at 7-8. This argument comes too late, as it did not appear in Mr. Basnett's opening brief. *See United States v. Ford*, 613 F.3d 1263, 1272 n.2 (10th Cir. 2010).

Cir. 2008). We do not believe that the district court committed plain error by declining to grant a *sua sponte* adjustment.

In urging that the court should have made such an adjustment, Mr. Basnett argues that one of the guns was a type of rifle that would have been used for hunting. Appellant's Opening Br. at 29. This argument, even if believed, would not demonstrate plain error because: (1) Mr. Basnett did not present any evidence to the district court to suggest that he had used the rifle solely to hunt, and (2) the government presented evidence that there were fourteen guns in the home; and even now, Mr. Basnett does not suggest that he had used any of the other guns solely to hunt. As noted above, Mr. Basnett would have been entitled to a downward adjustment only if he showed that he had kept all of the guns and the ammunition—rather than just one of the fourteen guns—solely to hunt or collect. Thus, even if we were to credit Mr. Basnett's unproven factual assertion in this appeal, we would not regard the absence of a downward adjustment as plain error.

In addition to claiming that the rifle was useful for hunting, Mr. Basnett contends that he owned the guns solely for collection. The parties disagree about whether this issue was properly preserved. Even if it had been preserved, however, the district court did not err by declining to address the possibility of a downward adjustment.

Mr. Basnett raised the issue in his sentencing memorandum, stating that three of the guns were bought as heirlooms for children and that a fourth gun (the

stolen .270 Winchester rifle) had been possessed "for collection purposes." R. vol. 1, at 22-23. But Mr. Basnett did not present evidence to support this statement; and even if we were to accept the statement at face value, it would not have accounted for ten of the fourteen firearms found in Mr. Basnett's home. As a result, the district court did not err by declining to grant a downward adjustment or to discuss this issue.

## III. Possession of the Firearms in Connection with a Separate Felony

The guidelines allow a sentencing enhancement for possession of firearms in connection with a separate felony. U.S. Sentencing Guidelines Manual § 2K2.1(b)(6) (2011). The district court applied this enhancement, finding that Mr. Basnett had kept the guns in connection with his concealment of stolen property. Mr. Basnett challenges this finding, and we must decide whether the finding constituted clear error. *See United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998). It did not.

The district court could apply the enhancement if the weapon had the potential to facilitate a separate felony offense. U.S. Sentencing Guidelines Manual § 2K2.1(b)(6) cmt. n.14(A) (2011). In applying this test and invoking the enhancement, the district court relied on the volume of stolen merchandise at Mr. Basnett's home and the proximity of his guns to the stolen property. R. vol. 2, at 10-11. Mr. Basnett argues that the district court:

- lacked sufficient evidence of a theft ring because the testimony consisted of hearsay or double hearsay, and

- lacked sufficient evidence for an inference to link the guns to a separate offense involving stolen property.

We reject both arguments.

## A.    Use of Hearsay

In part, Mr. Basnett challenges the finding that he had committed another felony.  This challenge is based on the trial court's use of hearsay.  The hearsay consisted of out-of-court statements by Jason Sears, Eddie Arnold, and Mr. Basnett's son to officers who repeated the statements to Agent Stephens. According to Mr. Basnett, the trial court improperly relied on the hearsay testimony in finding that he had stolen property.[2]  And, without that finding, the enhancement would have been improper because Mr. Basnett could not have used a firearm to commit a non-existent felony.  We reject Mr. Basnett's contention.

Our analysis of the contention involves three steps:

- whether Mr. Basnett preserved an objection to the use of hearsay,

- whether the hearsay statements contained minimal indicia of reliability, and

---

[2]    Mr. Basnett contends that the district court relied on a felony involving concealment of stolen property.  This contention is inaccurate.  The district court relied on a crime involving transportation of stolen property.  Concealment and transportation of stolen property are separate crimes.  Concealment is a crime under Oklahoma law, and interstate transportation is a crime under federal law. *See* Okla. Stat. tit. 21, § 1713(B) (2011); 18 U.S.C. § 2314 (2006).

- whether the district court committed clear error in its finding.

The government contends that we should confine our review to plain error because Mr. Basnett did not object to the admissibility of the out-of-court statements. Mr. Basnett responds that defense counsel argued to the district court that it should not rely on the out-of-court statements. We need not decide whether the plain-error standard applies because we would affirm even under a more rigorous standard of review. Still, we should address the nature of defense counsel's objection because it bears on our inquiry.

Defense counsel argued against reliance on the out-of-court statements, but did not object to their admissibility. On appeal, Mr. Basnett appears to make the same argument, challenging the district court's reliance on the out-of-court statements rather than their admissibility.

We can assume, for the sake of argument, that defense counsel's argument sufficiently preserved the objection. But, even so, we would consider only whether the district court's finding was clearly erroneous. *See United States v. Backas*, 901 F.2d 1528, 1529 (10th Cir. 1990) (holding that the sufficiency of evidence for a sentencing enhancement was "primarily factual," requiring application of the clearly erroneous standard). Applying this standard, we conclude that the finding was not clearly erroneous.

In arguing that the finding did constitute clear error, Mr. Basnett relies largely on the fact that Mr. Sears was a convicted felon and that the statements

-11-

made by Mr. Sears and Mr. Arnold constituted double hearsay. We may assume, for purposes of argument, that these statements involved double hearsay. But, the district court could rely on double hearsay as long as the statements contained minimal indicia of reliability. *See United States v. Lopez*, 100 F.3d 113, 120 (10th Cir. 1996) ("Hearsay statements need only contain minimal indicia of reliability to be used at sentencing.").

The district court could reasonably infer reliability from the existence of at least some corroboration. For example, Mr. Sears told investigators that they would find a .270 Winchester rifle (with some unique characteristics) at the Basnett home—and they did. R. vol. 2, at 88. Mr. Sears told investigators that the rifle had been stolen, and Agent Ashley Stephens testified that officers were able to corroborate this statement through a record review. *Id.*

Apart from the out-of-court statements by Mr. Sears, Mr. Arnold, and Mr. Basnett's son, authorities were able to confirm from "over a hundred pages of documentation" that many of the items in Mr. Basnett's home had been stolen. *Id.* at 123.

Mr. Basnett argues that the district court could not rely on this documentation because it was not included in the record. Appellant's Reply Br. at 16. For this proposition, he relies on *United States v. Boyd*, 289 F.3d 1254 (10th Cir. 2002). Appellant's Reply Br. at 16. This decision is inapplicable, and

Mr. Basnett confuses the need for record evidence supporting the enhancement and the need for corroboration.

Agent Stephens's testimony about the documentary evidence served only to support the reliability of his testimony about the out-of-court statements to other officers. The district court could rely on the testimony about this documentary evidence to decide whether the hearsay testimony was reliable.

*Boyd* does not suggest otherwise. There, the district court attempted to account for two different measurements of drug quantity. *See United States v. Boyd*, 289 F.3d 1254, 1257 (10th Cir. 2002). Rather than try to reconcile the difference through the evidence, the district court looked to case law and found opinions referring to decreases in drug quantity with the passage of time. *See id*. The district court relied on these decisions, rather than evidence, to arrive at its own finding on drug quantity. *Id*. We held that the court could not rely on evidence outside the record. *Id*. at 1258-60. But, we did not say—and have never said—that a district court is powerless to find reliability based on testimony about the content of supporting documents. Thus, we reject Mr. Basnett's contention that the district court improperly relied on the documentary evidence discussed by Agent Stephens.

In addition to complaining about the omission of this documentary proof from the record, Mr. Basnett argues that one witness, Mr. Kyle Eller, gave an out-of-court statement that accounted for at least some of the property believed to be

-13-

stolen. The government presented evidence that two Kubota tractors had been stolen, and Mr. Eller said that he and Mr. Basnett had bought something from a Kubota dealer. R. vol. 2, at 56-57, 89-90, 110. But, Mr. Eller also told investigators that he had been asked by Mr. Basnett to store a skid loader. *Id*. at 109. And, according to Agent Stephens, authorities were eventually able to confirm that this skid loader had been stolen. *Id*. at 107.

Because Agent Stephens's out-of-court statements were corroborated, the district court could reasonably rely on them to find that Mr. Basnett had a substantial volume of stolen merchandise in his home. Thus, the district court's finding did not constitute clear error.

**B.     Connection Between the Gun Possession and Transportation of Stolen Property**

The record also provided a reasonable basis to link the guns to a separate offense involving transportation of stolen property.

The evidence indicated that 60 stolen items were found in Mr. Basnett's home. *Id.* at 106-07. And the government presented evidence that Mr. Basnett had participated in a theft ring that involved hundreds of thousands of dollars. *Id.* at 57.

With the stolen property, Mr. Basnett had an extensive supply of guns and ammunition throughout his home. As discussed above, authorities saw fourteen different guns between the two searches. The authorities also found:

- sixteen rounds of .243 ammunition,

- five boxes of .270 ammunition,

- four boxes of 12 gauge ammunition,

- two boxes of .300 Winchester Magnum ammunition,

- one box of .38 Special ammunition,

- one box of .45 caliber ammunition, and

- two boxes and nine rounds of 20 gauge ammunition.

*Id*. at 62-63.

Some guns were under Mr. Basnett's bed, and others were in a child's room and in a dresser drawer. *Id*. at 64, 78, 99-101. According to one individual living in the home, there were several guns "out in the open." *Id*. at 124. Other evidence indicated that the guns had been moved "back and forth from room to room." *Id*.

From the volume of stolen property, guns, and ammunition at the home, the sentencing judge could reasonably infer that Mr. Basnett kept the guns in connection with his transportation of stolen property. The guns were spread throughout the home, with some out in the open. From this evidence, the district court could reasonably have inferred that Mr. Basnett had the guns out in the open so that he could use them to safeguard his stash of stolen merchandise. *See United States v. Waltower*, 643 F.3d 572, 578 (7th Cir. 2011) (holding that the accessibility of a loaded handgun supported the enhancement under section

2K2.1(b)(6) because the firearms had the potential to facilitate a drug trafficking offense).

The court could also reasonably have inferred that Mr. Basnett kept the guns for protection. The theft ring involved hundreds of thousands of dollars, and Mr. Basnett had 60 stolen items in his home. The court could legitimately have inferred that Mr. Basnett needed to keep the guns to secure his stolen property. *See United States v. Justice*, 679 F.3d 1251, 1255 (10th Cir. 2012) (holding that the enhancement can be applied if possession of a firearm could embolden the possessor to commit an offense). After all, if others were to steal from Mr. Basnett, he could scarcely have called the police. Thus, the district court could reasonably have inferred that the extensive supply of guns and ammunition provided Mr. Basnett with his sole source of protection. In these circumstances, the district court did not commit clear error in finding that Mr. Basnett had possessed one or more guns in connection with a separate felony. *See United States v. Rogers*, 594 F.3d 517, 522 (6th Cir. 2010) (upholding application of the enhancement because the defendant's possession of a gun at his home had the potential to facilitate his unlawful "chop-shop," because "chop-shop customers are by definition not law-abiding" and the defendant could not call the police if a customer decided to steal his parts), *vacated on other grounds*, __ U.S. __, 131 S. Ct. 3018 (2011) (mem.).

IV.    **Substantive Reasonableness of the Sentence**

Mr. Basnett argues that his sentence was substantively unreasonable. We reject this argument.

In addressing this argument, we consider whether the district court abused its discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). And in determining whether the court abused its discretion, we give substantial deference to its selection of an appropriate sentence. *United States v. Smart*, 518 F.3d 800, 806 (10th Cir. 2008). We presume the sentence is substantively reasonable when it falls within the sentencing guideline range. *United States v. Reyes-Alfonso*, 653 F.3d 1137, 1145 (10th Cir. 2011).

The district court did not abuse its discretion. In sentencing Mr. Basnett to 37 months in prison and 2 years of supervised release, the district court discussed the pertinent factors under 18 U.S.C. § 3553 and ultimately chose the lowest possible sentence under the guidelines. The district court acted within its discretion; thus, we reject Mr. Basnett's contention based on substantive reasonableness.

## V. Conclusion

The district court did not err in applying the sentencing guidelines. In applying these guidelines, the court could justifiably find that Mr. Basnett possessed eight or more "firearms." Once the court made this finding, it could also apply an enhancement based on possession of the guns in connection with the transportation of stolen property, and the court had no obligation to provide a

downward adjustment based on exclusive use of the firearms for hunting or collecting. The eventual sentence, falling at the bottom of the guideline range, was substantively reasonable. As a result, we affirm.