Anthony **COSTANZO**, Petitioner,

v.

**UNITED STATES of America,** Respondent.

No. 85 Civ. 7324 (KTD).

United States District Court, S.D. New York.

Dec. 13, 1990.

Anthony Costanzo, St. Petersburg Beach, Fla., petitioner pro se.

Otto G. Obermaier, U.S. Atty. for the S.D.N.Y., Carl H. Loewenson, Jr., Asst. U.S. Atty., of counsel, New York City, for the U.S.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Petitioner Anthony Costanzo proceeding *pro se*, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (1982). On May 21, 1981, Costanzo was convicted after a trial by jury of two counts of wire fraud, three counts of mail fraud, and one count of conspiracy to commit fraud by the United States Court for the Southern District of New York (Gagliardi, J.). He is currently on parole from that sentence, but nonetheless chooses to go forward with the instant petition. The United States Court of Appeals for the Second Circuit affirmed petitioner's conviction in all respects.[1] *United States v. Krown*, 675 F.2d 46 (2d Cir.1982).

Costanzo now seeks this petition on the grounds of: (1) prosecutorial misconduct; (2) ineffective assistance of counsel; (3) judicial misconduct; (4) perjury by a Government witness; and (5) violation of Costanzo's Sixth Amendment right to counsel.

## FACTS

During 1978, Costanzo and his co-defendants negotiated millions of dollars in worthless financial instruments issued by the First London Bank and Trust Co. ("FLBT") and First National Bank of Teheran ("FNBT"), fraudulent off-shore "banks," founded and controlled by Costanzo's co-defendant, Kevin Krown. The banks, ostensibly located in the West Indies, constituted no more than charters of incorporation, telephone exchanges, and a stockpile of legitimate-looking cashier's checks, letters of credit, and certificates of deposit. Although there was a New York office, the banks had no assets, no vaults, and no tellers. As was adduced at trial, the bank could not perform any of the financial services ascribed to it by Krown,

---

1. The Second Circuit did reverse convictions on several counts against two co-defendants on issues not relevant to petitioner Costanzo either on that appeal or in the instant petition.

Costanzo, or James Feeney, another of the co-defendants.

Krown employed a network of "finders" to negotiate the worthless financial instruments. Costanzo and Feeney, among others acting as "finders," approached businessmen in need of financial assistance and offered to obtain loans for a 10% cash fee to be paid in advance. The promised loans were in the form of FLBT or FNBT cashier's checks, certified checks, letters of credit, certificates of deposit, or checking account lines of credit, issued by Krown in New York. Apparently, Krown, Costanzo, and other co-defendants represented to their customers that the financial instruments were immediately negotiable and would be honored by the bank as soon as they were received. Unbeknownst to those ultimately defrauded, these financial instruments were worthless and would never be honored by Krown's bank. When the instruments were not honored immediately, Krown or Costanzo would blame the delay in payment on the slowness of the mails, foreign banking holidays, and a mishandling of the items by the collecting banks. Occasionally, Krown, Costanzo, or others connected with them would make proper payment on the instrument in order to lull any suspicions as to the legitimacy of the scheme. *See United States v. Krown,* 675 F.2d 46, 49 (2d Cir.1982).

Krown, Costanzo, and their co-defendants also negotiated checks drawn from the FLBT and FNBT by using them to purchase goods or services from unwitting merchants and to cash in at local banks. None of these checks were honored when the merchant or local bank attempted to obtain payment on them from Krown's issuing "bank," the West Indies shell.

## DISCUSSION

### 1. *Prosecutorial Misconduct*

Costanzo alleges prosecutorial misconduct based on the failure of the Government to disclose to Costanzo certain exculpatory material to which he claimed entitlement at trial pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and 18 U.S.C. § 3500 (1982).

Although Costanzo never specifies what material should have been disclosed or how such disclosure might have affected the outcome of his trial, he alludes to an unrelated 1983 Colorado action involving Krown and Feeney which was dismissed by United States District Judge Fred Winner for failure to turn over *Brady* material. That case, however, has nothing to do with the facts at bar.

The Colorado action involved events that took place in 1977–1978, well before Feeney turned states evidence and agreed to cooperate with the United States Attorney's office for the Southern District of New York in this case. In short, Feeney's dealings with the United States Attorney's office in New York, which lead to Judge Winner's decision, had no effect on Feeney's prosecution here. Those dealings have no rational bearing on Costanzo's prosecution for crimes committed in 1977 and 1978. Likewise, Judge Winner's dismissal of the Denver indictment, which charged crimes committed in 1979 by Krown and Feeney, has no effect on the validity of Costanzo's conviction here. Costanzo was not even a defendant in the Denver prosecution.

Nor does the Second Circuit's remand of Judge Gagliardi's dismissal of Krown's most recent § 2255 motion, which was based on the alleged misconduct that led to the vacation of Feeney's and Krown's Colorado convictions, impact Costanzo. That remand involves a wholly separate investigation and Colorado prosecution and has no connection with Costanzo.

As early as 1978, Assistant United States Attorney ("AUSA") Carolyn Henneman began investigating frauds in connection with FNBT and FLBT, the fraudulent offshore banks at bar, focusing on frauds from 1977 and 1978. In February 1979, while the offshore banking investigation was pending and before any indictments had been returned, Feeney independently approached the United States Attorney's Office in the Southern District of New York, offering to cooperate. The cooperation agreement concerned the Government's effort to secure the extradition of fugitive financier

Robert Vesco and is wholly unrelated to the matters at bar.

Moreover, Costanzo has made no specific claim that there is any such *Brady* material. This is not surprising in light of the fact that Costanzo, unlike Feeney and Krown, never participated in the Vesco investigation. Costanzo's only contact with the United States Attorney's Office was as a subject of, and later a defendant in, the FNBT and FLBT fraudulent offshore banking investigation and prosecution. This was a separate matter from the Vesco investigation. Further, Costanzo has not demonstrated how his conviction was tainted by anything that happened in the Vesco investigation.

Feeney also raised prosecutorial misconduct claims on two occasions, once in a pretrial motion in connection with sentencing and in a motion for bail pending appeal, both filed in January 1981 in this District. In each case, Judge Gagliardi rejected Feeney's claims, finding that he had not been promised immunity and there was no prosecutorial misconduct tainting his convictions. Costanzo wholly fails to show facts which would change that same conclusion here. There is no apparent or purported link whatsoever between Costanzo and the Vesco investigation which would warrant dismissal of the charges against Costanzo at this juncture. *See* Henneman Affid.; Doonan Affid., Exhs. A and B annexed to United States' Memo. in Opposition to Petition.

Moreover, a trial judge must be afforded due deference to his findings for he was present at the trial and best able to judge the evidence and credibility of the witnesses. *See Sumner v. Mata*, 455 U.S. 591, 592, 102 S.Ct. 1303, 1304, 71 L.Ed.2d 480 (1982) (in habeas proceedings, trial court is accorded "a presumption of correctness" as to its findings.) Costanzo has failed to show that his conviction was somehow tainted by Feeney's cooperation agreement. And just because Feeney may raise claims of misconduct, that does not mean that such claims necessarily benefit Costanzo.

Significantly, during the time that Feeney was often raising these misconduct claims, Costanzo did not argue that his conviction was at all tainted by prosecutorial misconduct.

Even if there was a *Brady* violation that invalidated Feeney's and Krown's Colorado convictions, such violations could not possibly taint Costanzo's convictions at bar.[2] It is significant that Judge Gagliardi repeatedly found that Feeney, who unlike Costanzo was directly involved in the Vesco investigation, was not entitled to relief. Indeed, Costanzo never even thought to raise these claims at all until he filed the instant § 2255 petition. Costanzo never specified the misconduct, let alone how it might have affected his conviction. He has adduced no reason why the extant assertions should be accorded more weight than were accorded Feeney's claims. The uncontroverted record establishes that all of the defendants received all materials to which they were entitled.

Costanzo further claims to be the victim of selective prosecution. That assertion is of no moment. For a valid claim of selective prosecution to stand, Costanzo must prove that he was treated differently from other similarly situated persons, or that he was singled out for an illegitimate reason such as race or the exercise of a protected right. *See Wayte v. United States*, 470 U.S. 598, 623–26, 105 S.Ct. 1524, 1538–40, 84 L.Ed.2d 547 (1985). Costanzo's allegations that the Government failed to disclose certain unindicted co-conspirators in the offshore banking investigations are not substantiated by the facts. The allegations are predicated "on information and belief" and hardly provide enough for me to deduce what the claim might be or how Costanzo was prejudiced by them. *See Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (defendant must demonstrate that knowledge of informant's identity would be material to his defense).

---

**2.** Krown was involved in the Vesco investigation at least to some degree. There is no evidence which would tend to show that Costanzo was even remotely involved in that investigation.

Moreover, Costanzo claims that it is "unfair justice" for him, a "finder," to be charged with the same conspiracy as Krown because Krown masterminded the fraudulent offshore banking scheme and was never indicted for the instant conspiracy. Assuming double jeopardy or other constitutional principles prevented the indictment of Krown, this does not mean that these concerns work to Costanzo's benefit. Indeed Costanzo was found to have conspired with other "finders" and he is no less liable for conspiracy merely because he played a lesser role in the scheme than others, including Krown. *See Sabari v. United States,* 333 F.2d 1019 (9th Cir.1964); *United States v. Stromberg,* 268 F.2d 256, 265 (2d Cir.), *cert. denied,* 361 U.S. 863, 80 S.Ct. 123, 4 L.Ed.2d 102 (1959). It is axiomatic that in a conspiracy a co-conspirator can be found guilty of the conspiracy even if an unindicted member of the conspiracy reveals the link. Krown did not operate in isolation from the other finders in defrauding each victim. Rather, the evidence suggests otherwise, that all of the finders who were ultimately convicted played complimentary roles in scheme after scheme. As such, Costanzo was properly convicted of conspiring even if the charges were not pursued against Krown.

### 2. *Allegations of Ineffective Assistance of Counsel*

■ Costanzo claims that he did not receive constitutionally adequate assistance of counsel because his attorney, Barry A. Bohrer, applied for and subsequently accepted a job at the United States Attorney's Office for the Southern District of New York during Bohrer's representation of Costanzo in this matter. In order for Costanzo to prevail on this Sixth Amendment claim he must show that an actual conflict of interest adversely affected Bohrer's performance. Allusions to the mere possibility of a conflict of interest due to Bohrer's association with the United States Attorney's Office are insufficient. *See Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980) (defendant is required to show that counsel's representation was less than zealous, evincing an actual conflict).

Costanzo's assertion that he was not fairly represented is belied by the record. He deliberately waived Bohrer's potential conflict on the record and in Judge Gagliardi's presence. He then requested Bohrer's continued representation even after Bohrer had fully disclosed his pending application to be an Assistant United States Attorney. Costanzo defended Bohrer's ability to perform as Costanzo's counsel up until the Second Circuit's denial of the petition for a rehearing following affirmance of the convictions.

Further, Costanzo fails to show that he received legal assistance outside the range of reasonable competence demanded of attorneys on criminal cases. *See Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) ("The court must [ ] determine whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance.") Bohrer filed several pretrial motions for Costanzo, including motions to sever and to suppress evidence derived from Costanzo's former attorney, Frank Paglianite. Not only did Bohrer comply with obligations pursuant to Disciplinary Rule 5–101(A),[3] but Judge Gagliardi never questioned Bohrer's integrity. His trial strategies and cross-examinations were consonant with sound and zealous representation.

Finally, Bohrer was forced, by ethical concerns, to withdraw as defense counsel to Costanzo after having accepted a position at the United States Attorney's Office. In the same petition that asserts a conflict in representation, Costanzo also claims abandonment, even though it was no long-

---

**3.** Disciplinary Rule 5–101(A) of the Code of Professional Responsibility, in pertinent part, states:

Except with the consent of his client after full disclosure, a lawyer shall not accept employ- ment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

er feasible for Bohrer to defend Costanzo. A federal prosecutor obviously cannot continue to represent a criminal defendant that the prosecutor had represented while he was in private practice. There is absolutely no merit to Costanzo's complaints about trial counsel.

### 3. Purportedly Perjured Testimony Used by Government

Costanzo claims that he was wrongly convicted by the perjured testimony of Government witness Nicholas Agostino. Like Costanzo, Agostino had been one of the "finders" whom Krown had employed to distribute worthless financial paper. Agostino entered a guilty plea and was sentenced on charges arising out of his participation in the scheme. Agostino testified for the Government at trial. Costanzo's argument that his conviction is invalid because Agostino committed perjury fails to clear several legal and logical hurdles.

In order to prevail on this aspect of the motion, Costanzo must first show that the witness actually lied in his testimony. *United States v. Gonzalez*, 748 F.2d 74, 77 (2d Cir.1984). Second, he must prove that the Government "knew or should have known the testimony to be false." *United States v. Bortnovsky*, 879 F.2d 30, 33 (2d Cir.1989). Third, he must show that "there is [a] reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Costanzo has provided nothing more than conclusory assertions to support his claim that Agostino lied.

Costanzo only alleges that Agostino was relatively more culpable than Costanzo. Even crediting Costanzo's version of the truth, almost none of Agostino's allegedly perjured testimony inculpated Costanzo. Rather, the testimony tended to exculpate Agostino. That Costanzo may have some additional evidence against Agostino is beside the point. Showing Agostino's greater guilt would not imply Costanzo's greater innocence, because Costanzo and Agostino acted in concert, not independent-ly in the aforementioned transactions. Costanzo and Agostino played similar roles in the fraudulent scheme. They induced victims to part with money in exchange for worthless paper, at times working in tandem with one another. One co-conspirator's false exculpatory testimony would not wrongly inculpate another co-conspirator in this case because the crimes for which Costanzo was convicted do not involve single discrete acts. It was proven at trial that Costanzo and the other finders were career con men, bilking victims after several sustained contacts and misrepresentations. Thus, even if Agostino did lie in minimizing his own role, such testimony was not material to the case against Costanzo. *See United States v. Madonna*, 556 F.Supp. 260 (S.D.N.Y.), *aff'd without op.*, 697 F.2d 293 (2d Cir.1982), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 734, 74 L.Ed.2d 957 (1983).

Finally, there is no showing that Government knew or had reason to believe, that Agostino testified other than truthfully and candidly. According to the prosecutor, Agostino has testified for the Government in several trials, including this one, and had never, to her knowledge committed perjury. Henneman Affid., Exh. D, ¶ 3.

Indeed, Agostino demonstrated excellent recall of facts, all of which were corroborated by independent evidence. Moreover, the prosecutor Henneman strategically declined to call another turncoat witness, after having discredited his ability to testify truthfully. Thus, I find that the Assistant United States Attorney was discriminating and savvy, understanding the absolute necessity for reliable testimony. *See Burke v. United States*, 715 F.Supp. 445, 448 (E.D.N.Y.) (Weinstein, J.), *aff'd without op.*, 891 F.2d 277 (2d Cir.1989) (where court acknowledges prosecutor's actions as manifesting dedication and diligence, it can be presumed that prosecutor, for "tactical and ethical" reasons, has acted forthrightly and truthful in unless proven otherwise). Costanzo wholly fails to show that Henneman's acts were venal or that any miscarriage of justice occurred because she used Agostino's testimony. In reviewing the sufficiency of the evidence to support a

jury determination of guilty, I am required to consider all of the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Indeed, Henneman showed great restraint and adhered to high ethical standards by declining to use certain testimony otherwise helpful to the government against Costanzo.

Since Costanzo has failed to show that Agostino committed perjury, that such perjured testimony was material, or that the Government knew or should have known that Agostino committed perjury, Costanzo is not entitled to habeas corpus relief. I find that Costanzo's perjury claim is groundless and lacking in substance; he asserts no more than thinly veiled and baseless allegations on this ground of his petition. The perjury claim must summarily be dismissed because it would be a gross waste of judicial resources to grant him a hearing on such vague assertions at this juncture. *See United States v. Franzese*, 525 F.2d 27, 32 (2d Cir.1975), *cert. denied*, 424 U.S. 921, 96 S.Ct. 1128, 47 L.Ed.2d 328 (1976); *United States v. Manfredi*, 447 F.Supp. 847, 850–51 (S.D.N.Y.1978).

4. *Confidential Communications with Frank Paglianite, Esq.—an F.B.I. Informant*

█ Costanzo claims that the Government interfered impermissibly with his Sixth Amendment right to counsel. Alleging that he consulted Paglianite as an attorney during a period in which Paglianite was an FBI informant, Costanzo, prior to trial, moved to suppress any of his allegedly confidential communications. He then demanded a hearing to determine whether the Government's trial evidence had been derived from, and was thus "tainted" by, any such communications. In response, the Government submitted affidavits of the agents who debriefed Paglianite, demonstrating beyond any doubt that Paglianite never provided information to the Government which was either privileged or that had any bearing on the instant case. In addition, the Government represented that it would not use any Paglianite-derived information at the trial, and suggested to the court that it await the presentation of evidence at trial so it could determine for itself whether there was any "taint". Ruling that Costanzo had failed to demonstrate any prejudice, the trial court denied his motion without prejudice to renewal at the conclusion of the trial.

Several months after the trial, and four days before sentencing, Costanzo renewed his motion. Costanzo, however, failed to demonstrate that any of the Government's evidence at trial was derived from Paglianite. Again the court denied his motion for failure to establish a requisite showing of taint. On appeal, Costanzo challenged the trial court's refusal to conduct an evidentiary hearing. The Second Circuit found no need to address the claim in affirming Costanzo's convictions. *See United States v. Krown*, 675 F.2d 46 (2d Cir.1982), *cert. denied*, 459 U.S. 1210, 103 S.Ct. 1204, 75 L.Ed.2d 445 (1983).

Costanzo's post-trial submission, asserting that he consulted Paglianite as an attorney concerning FNBT and FLBT until July 1978 fails in several respects. Costanzo's consultations with Paglianite, assuming they occurred, were not shown to have been privileged. Paglianite never disclosed these alleged communications to the FBI, nor did they surface in the Government's prosecution of Costanzo. At most, Costanzo's submissions indicate that he might have had an attorney-client relationship with Paglianite.[4] However, since the Government conceded this point for the sake of argument, there is no need for a hearing on the issue now. None of the FBI agents were shown to have received information from Paglianite when Paglianite was allegedly advising Costanzo on FLBT.[5]

---

**4.** In the instant motion, Costanzo proffers bald and incredible assertions. He proffers no evidence which in any way contradicts the agents' denials that Paglianite ever discussed FLBT or FNBT with them. Costanzo's personal skepticism is no substitute for a showing that relevant information was passed on to and used by the Government.

**5.** These facts distinguish the instant case for the situation before the Third Circuit in *United States v. Costanzo*, 625 F.2d 465 (3d Cir.1980),

Further, Costanzo is wholly unable to point to any prejudice resulting from Paglianite's relationship as informant with the FBI. The trial court saw and heard all of the evidence against Costanzo and thus could see for itself that none of it derived from Paglianite. There was neither any evidence nor allegation that witnesses against Costanzo were attributable to information provided by Paglianite. *See e.g., United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). Thus, Costanzo can demonstrate no prejudice. The Supreme Court reiterated that a remedy exists for a Sixth Amendment violation only where there is a showing of prejudice to the defendant's representation or trial. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Moreover, a defendant can only put the Government to the burden of showing that its evidence is untainted if he "goes forward with specific evidence demonstrating taint." *Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 972, 22 L.Ed.2d 176 (1969). Here there was no semblance of such a showing and Costanzo's request for an evidentiary hearing must again be denied.

5. *Judicial Misconduct*

Costanzo provides a litany of alleged judicial misconduct by Judge Gagliardi. Costanzo claims that Judge Gagliardi's admissions of certain evidence and refusals to conduct hearings constitute judicial misconduct and were violative of Costanzo's fundamental rights. For the reasons stated above, Costanzo fails to state a claim and/or show prejudice. Costanzo cannot simply attribute all of the petition's allegations to judicial misconduct and, as such, I find that there is no merit to those claims. Furthermore, it is obvious from the record that Judge Gagliardi not only conducted a fair trial, but, that Costanzo was accorded every favorable presumption and extended

every courtesy prior to and during trial. The history and background of this case, as set forth in all the submissions, clearly manifests Judge Gagliardi's penchant for justice which has been and is above reproach.

For the foregoing reasons, Costanzo's petition for a writ of habeas corpus is denied in its entirety and the petition is dismissed. Leave to appeal *in forma pauperis* is denied for any appeal taken at this juncture could not be deemed to be taken in good faith.

SO ORDERED.

---

*cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). In that case, the agents were receiving information from Paglianite while Costanzo was being tried and while he was having discussions with Costanzo about the case on trial. In these circumstances, the Court held Costanzo's allegations about the existence

of an attorney-client relationship were sufficient to warrant a hearing. In this case, however, the Government made an unrebutted showing that the FBI's relationship with Paglianite had ended by the time Costanzo consulted him, if he did, about the facts of this case.